POLA MANNINA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mannina v. Commissioner
Docket No. 8203-82.
United States Tax Court
T.C. Memo 1985-565; 1985 Tax Ct. Memo LEXIS 69; 50 T.C.M. (CCH) 1421; T.C.M. (RIA) 85565; November 18, 1985. Edward *70 Levett, for the petitioner. Ronald A. Stein, for the respondent. PARKER MEMORANDUM OPINION PARKER, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Year
Deficiency
[1] Sec. 6653(a) Addition
1977
$2,204
$110.20
1978
3,555
177.75
After numerours concessions as set out in the parties' stipulation of settled issues, the sole issue remaining for decision is whether the periodic payments that petitioner received from her former spouse during the years 1977 and 1978 are properly includible in petitioner's income for those years under section 71(a). This case was submitted fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Pola Mannina resided in Downers Grove, Illinois, at the time the petition was filed in this case. Petitioner filed her individual 1977 and *71 1978 Federal income tax returns (Forms 1040) with the Internal Revenue Service Center at Kansas City, Missouri. In 1972, after 15 years of marriage, petitioner's husband, Anthony Mannina, filed for a divorce in the State of Illinois. Petitioner was represented by counsel in the divorce proceeding. The Circuit Court of DuPage County entered a divorce decree on March 14, 1973. The divorce decree physically incorporated the "Marital Settlement Agreement" entered into by the parties on March 8, 1973. The divorce decree also expressly approved that agreement and incorporated it in the decretal section of the divorce decree. At the time of the divorce, petitioner and her husband had three children born of the marriage: Anthony, age 14 years; Tracy, age 12 years; and Trent, age 9 years. Under the terms of the divorce decree, petitioner received custody of the minor children. She also was awarded the exclusive possession of the marital residence located at 5418 S. Washington Street, Downers Grove, Illinois. The parties agreed to continue to hold title to the marital residence as joint tenants for as long as petitioner and the minor children were its sole occupants and until the youngest *72 child was emancipated or until petitioner remarried, whichever occurred first. The divorce decree also provided for child support payments. Paragraph D of the decretal section of the divorce decree, which provided for child support, stated as follows: The plaintiff [the husband] shall pay to the defendant [petitioner herein] the sum of Fifty ($50.00) Dollars per week per child, for a total of One Hundred Fifty ($150.00) Dollars per week as and for child support for the parties' three minor children, said payments to commence on the first day of the week following the date of entry of this Decree. [2]
Among other things, the divorce decree granted Anthony Mannina the right to claim the minor children as his dependents for Federal and state income tax purposes. [3] In addition, although alimony was not provided for therein, the divorce decree specifically reserved in the decretal section thereof petitioner's right to alimony. The state court expressly retained jurisdiction of the case until the terms of the decree had been fully complied with in all respects. *73 In 1977, Anthony Mannina filed a petition in the Circuit Court of DuPage County for relief from the terms of the divorce decree. Petitioner was represented by counsel during this proceeding. The state court entered an order on March 4, 1977, finding that there had been a reservation of alimony from the husband to petitioner and decreeing as follows: 1. That the plaintiff, Anthony F. Mannina, shall pay to the defendant, Pola Mannina, the sum of $170.00 per week commencing March 1, 1977 for a period of one year as unallocated support for the plaintiff [sic] and minor children. That commencing March 1, 1978, Anthony F. Mannina shall pay the sum of $150.00 per week for a period of two years as unallocated support for the plaintiff [sic] and the minor children. That commencing March 1, 1980, Anthony F. Mannina shall pay the sum of $20.00 per week for the support of the remaining minor child of the parties hereto. In addition to the foregoing, should the defendant, Pola Mannina, remarry at any time while this Order is in force and effect, the amount of support remaining from time to time shall be reduced by one-third, and said Pola Mannina shall notify the plaintiff, Anthony *74 F. Mannina, of her remarriage. Both petitioner and respondent agree that the reference to "unallocated support for the plaintiff and minor children" reflects an inadvertent error and should read "unallocated support for the defendant [petitioner herein] and minor children." The order of March 4, 1977, also made other changes in the provisions of the earlier Marital Settlement Agreement and the divorce decree. The principal change was that Anthony Mannina was to transfer his right, title, and interest in the marital residence to petitioner. [4] A few days later that order was modified and corrected as to the exact payments to be made for the months of February and March 1977. [5] The record in this case does not indicate that either Anthony F. Mannina or petitioner herein, Pola Mannina, has ever sought any correction, change, or modification of the provision of paragraph 1 of the order of March 4, 1977, in regard to the "unallocated support for [petitioner herein] and minor children." *75 During 1977 and 1978, petitioner received periodic payments from her former husband totaling $7,502 and $7,960, respectively. Petitioner did not report these payments on her tax return either year, apparently considering the payments to be child support. On her 1977 and 1978 tax returns, petitioner also claimed dependency exemptions for her three children. By statutory notice of deficiency dated February 18, 1982, respondent determined the periodic payments that petitioner received during 1977 and 1978 qualify as alimony under section 71. Accordingly, respondent increased petitioner's income for those years in the amounts of $7,502 and $7,960, respectively. Periodic payments received by the wife under a decree of divorce or separate maintenance in discharge of a legal obligation imposed on the husband by such decree because of the marital or family relationship are generally includible in the wife's income pursuant to section 71(a)(1). [6] Child support payments are generally not includible in her income. However, when the decree, instrument, or agreement incident to divorce covers both "alimony" payments to the wife and child support payments, such periodic payments are taxable *76 to the wife unless the decree, instrument, or agreement "fixes" an amount as child support. Sec. 71(b). [7] To avoid inclusion in the wife's income, the amount of child support must be fixed "in terms of an amount of money or a part of the payment," and this statutory requirement is strictly enforced. As the Supreme Court in , stated: The [decree, instrument, or agreement] must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that a "sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of Congress. *77 Petitioner admits, and we agree, that the order of March 4, 1977, which altered the original divorce decree [8] to provide for "unallocated support for the [petitioner herein] and minor children" clearly does not "fix" the payments for the years in issue as child support under Lester.[9] However, petitioner asks this Court to read the support provision in the altered decree in conjunction with the support provision in the original divorce decree, which clearly "fixes" the payments therein as child support. Petitioner contends that the unallocated support provision in the altered decree simply reflects a rewording of the child support provision in the original decree, and accordingly, we should construe the unallocated support payments under the altered decree as child support. In making this argument, petitioner seems to ignore the clear language of the 1977 altered decree and seems to rely upon cases decided before the Supreme Court's Lester opinion. *78 It can be argued that in one case this Court construed an unallocated support provision in an altered divorce decree pursuant to the terms of the support provision in the original divorce decree. , affd. in part, revd. in part and remanded . In addition to the fact that Joslyn was a pre-Lester case, the altered decree in that case was actually unenforceable and thus Joslyn is distinguishable from the instant case, factually and legally. In the Joslyn case, the obligor specifically retained the right in the altered divorce decree to discontinue the payments under such decree and to reinstate and to make payments under the support provision in the original divorce decree. The retention of that right effectively made the support provision in the altered decree unenforceable, and consequently, the terms of the support provision in the original decree remained legally binding on the parties. We concluded that the altered decree did not alter the legal obligation imposed by the original decree. Therefore, we apportioned the payments under the altered decree as between *79 alimony and child support in accordance with such apportionment as stated in the original decree. , affd. on this point . However, here neither spouse reserved any right to reinstate the child support provisions of the original divorce decree, and the 1977 altered decree completely superseded the earlier decree in that regard. Where the altered divorce decree is separate and distinct from the original decree and clearly sets forth the rights and obligations of the parties, we look only to the language in the altered decree. . In , the original divorce decree provided for payment of alimony and child support in the amounts of $200 per month and $500 per month, respectively. Two altered decrees subsequently were entered, and each decree revised the amount of the support payments in the original decree and also recharacterized the nature of such payments. Each altered decree provided for lump-sum, unallocated, periodic payments without any apportionment as between alimony and *80 support for the children. In that case the former husband was claiming a deduction for the full amount of the unallocated, periodic payments, and the Commissioner, for reasons that are not wholly clear in the opinion, [10] inexplicably argued that the original divorce decree survived the two subsequent decrees and that the terms of the original decree controlled the characterization of the payments made under each of the altered decrees. We found no basis under the Illinois law or the terms of the altered decrees for the Commissioner's argument. Following the Seventh Circuit, [11] to which any appeal in this case would also lie, we concluded that the altered decrees superseded the original divorce decree. Since neither of the altered decrees fixed, in terms of an amount of money or a portion of the payment, a sum for the support of minor children, no part of the payments made under the altered decrees came within the provisions of section 71(b) as child support. *81 We found it significant in Hizel that both spouses there, as here, were represented by counsel at the time the circuit court entered the original divorce decree in which the court specifically retained jurisdiction over the subject matter therein. The former spouses there, as here, again were represented by counsel in both instances when the circuit court subsequently entered the altered decrees, neither of which "fixed" an amount as child support. Moreover, there, as here, there was an intimation that the original divorce decree was altered in order to give the former husband the benefit of an alimony deduction for the unallocated support payments. We stated that: Furthermore, even though the altered decrees were so framed as to permit deductions by Loren of payments made thereunder, no criticism can rightly be made. Loren, as any other taxpayer, had a right to avoid taxes by any legitimate means. Congress prescribed the conditions upon which a wife is obligated to include alimony payments in her gross income, which it, at the same time, gave the husband a right to deduct. Even though Loren may have sought and the Court awarded a decree which would bring the payments *82 and the parties within the statutory provision, no just complaint can now be made by the Commissioner. P-H Memo T.C. P80,294 at 1316-80. Here, too, no just complaint can be made by petitioner. Petitioner agrees with the result in Hizel but suggests it is distinguishable. The distinction, she contends, is that the original divorce decree in Hizel provided for alimony and child support, whereas the original decree herein provided for just child support and specifically reserved her right to alimony. We think this is a distinction without a difference. Petitioner argues that her right to alimony was reserved in the original divorce decree and that nothing in the 1977 altered decree indicates that an alimony order was entered. While we do not consider the matter determinative one way or the other, we disagree with petitioner's underlying premise. The 1977 altered decree recites that: [T]he parties herein each being represented by the respective counsel, and by stipulation the Court DOTH HEREBY FIND That there has been a reservation of alimony from the Plaintiff, Anthony F. Mannina, *83 to the Defendant, Pola Mannina; and, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED * * *. We think this language shows that some part of the unallocated support payments was intended as support for the wife, i.e. as alimony. The classic Lester-type language is "support for the wife and children" without any amount "fixed" as child support. The 1977 altered decree in this case falls into that classic mold and by using the word "unallocated" ("unallocated support for [petitioner herein] and minor children"), that decree would seem to emphasize that it was intended that the full amount of the periodic payments would be taxable to petitioner and deductible by her former spouse. Nonetheless, petitioner is apparently arguing that the child support provision in the original decree somehow overrides the unallocated support provision in the altered decree, and accordingly, we should construe the unallocated support payments made under the altered decree as child support. However, it is clear that the periodic payments that were made to petitioner were computed under the 1977 altered decree and not under the original divorce decree; it is also clear that the other terms of the 1977 *84 altered decree, such as transfer of the marital residence to petitioner in fee simple, were carried out by the former spouses.We do not see how petitioner can still claim that the payments were somehow still governed by the terms of the original divorce decree. If the 1977 altered decree does not correctly reflect the state court's order, petitioner should seek correction from that court, not from the Tax Court. While Federal tax consequences cannot be changed by purported retroactive amendments or modifications of state court decrees, the Tax Court can consider a true nunc pro tunc amendment or modification that corrects the decree to read as the state court originally intended it to read. ; . However, petitioner has never suggested that the state court intended the 1977 altered decree to read other than as it now reads. While petitioner and her former husband sought a correction in that decree in regard to the payments for February and March 1977, neither spouse ever sought any correction of the critical language--"unallocated support for [petitioner herein] *85 and minor children." Petitioner, however, urges us to consider the serious inequities that she says would result if the payments under the altered decree are construed as alimony. She contends the total amount payable under the altered decree is less than the total amount that remained payable under the original decree as of the date the altered decree was entered. Furthermore, petitioner contends it is absurd and illogical to believe she knowingly intended to exchange her tax-free child support payments for payments of a lesser amount that are fully taxable to her. Again, if petitioner is suggesting that the state court made an error in the 1977 altered decree, she should address that matter to the Circuit Court of DuPage County, not this Court. Also in making her arguments, petitioner conveniently overlooks the fact that she also received the marital residence under the 1977 altered decree. In any event, the Supreme Court in Lester looked only to the language in the decree, instrument, or agreement and refused to consider extrinsic evidence of the spouses' intent. . Moreover, even if we wanted to look at the spouses' intentions, *86 there is simply no basis for concluding that it was the intention of the former spouses or the Circuit Court of DuPage County that the payments made during the tax years 1977 and 1978 under the unallocated support provision in the altered decree be treated as child support. The altered decree by clear language evidences a contrary intention. See ; P-H Memo T.C. P80,294 at 1316-80. As the Supreme Court in Lester stated "[t]he [decree, instrument, or agreement] must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income." . We think that it is significant that petitioner herein was represented by counsel at the time the Circuit Court of DePage County entered the original decree and specifically retained jurisdiction over the matter. Petitioner also was represented by counsel at the time the circuit court entered the altered decree. There is nothing to indicate that the parties *87 remained legally obligated to the support terms in the original decree. The altered decree neither referred to nor afforded either party the right to reinstate and enforce the support provision in the original divorce decree. The altered decree specifically provided for unallocated support payments for the initial three years, which included the years in issue. The altered decree also showed that the spouses and the circuit court knew how to fix an amount as child support, as was clearly done for the payments commencing on March 1, 1980. In addition, the altered decree provided for a one-third reduction in the amount of support that remained payable at the time petitioner remarried; there was no such provision in the original divorce decree because no alimony was provided in the earlier decree. This change too shows that the 1977 altered decree controls and superseded the original divorce decree in that regard. Paragraph 2 of the altered decree awarded petitioner title to the marital residence in fee simple.Under the terms of the original decree the title to such property was held by the former spouses as joint tenants. In effect, the altered decree not only revised the amount *88 and changed the nature of the support payments, but also set forth new conditions and obligations of the parties. Based on the clear language of the 1977 altered decree, the unallocated support provision in the altered decree superseded the child support provision in the original divorce decree. Moreover, it seems that petitioner fully realized the tax consequences surrounding the unallocated support payments in the altered decree, since she claimed her three children as her dependents. If the payments were child support paid by the father, it would seem he would be entitled to the dependency exemptions. Under the terms of the original decree, Anthony Mannina was entitled to claim the children as his dependents. While the record does not indicate whether Anthony Mannina also claimed exemptions for the children in these years, petitioner's actions at the very least were consistent with the change in tax liability associated with the unallocated support payments in the altered decree. As the Seventh Circuit noted in an earlier alimony/child support case, "To think that the attorneys for the parties, as well as the court, did not appreciate such consequences would amount to a reflection *89 upon their intelligence." . Accordingly, because the altered decree did not "fix" an amount payable as child support, the unallocated support payments received under such decree during the taxable years 1977 and 1978 totaling $7,502 and $7,960, respectively, were properly includible in petitioner's income under section 71(a) for those years. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. The Marital Settlement Agreement incorporated in the divorce decree also contained a child support provision that stated as follows: 3. The Husband shall pay to the Wife, the sum of $50.00 per week per child for the support of the three minor children, such payments to continue until the real property located at 5418 Washington Street, Downers Grove, Illinois is sold as hereinafter provided; upon the sale of the real property aforesaid, the Husband shall pay to the Wife, the sum of $66.66 per week per child as and for child support. Presumably, this child support provision would have controlled in the event the real property stated therein [the marital residence] was sold. Paragraph 8(b) of the Marital Settlement Agreement provided for the sale of the marital residence upon petitioner's remarriage or the emancipation of the youngest child, whichever occurred first. In addition to the specific child support provision, other provisions in the Marital Settlement Agreement covered the children's educational, vacation, and health expenses for which the husband was also responsible. ↩
3. Paragraph 13 of the Marital Settlement Agreement provided as follows: So long as the Husband shall make the payments required hereunder in connection with the support, maintenance and education of the children of the parties, he alone shall have the right to claim the children for whom he is making such payments, as his dependents, for Federal and State income tax purposes.↩
4. The order of March 4, 1977, further provided as follows: 2. That the plaintiff, Anthony F. Mannina, shall transfer all of his right, title and interest as a beneficial owner of the marital premises at 5418 S. Washington, Downers Grove, Illinois, to the defendant, Pola Mannina, and that the defendant shall be responsible for all of the expenses, including but not limited to the mortgage and utilities, concerning the subject property; however, the plaintiff shall remain liable for any tort liability on the premises which occurred prior to the transfer of the title. 3. That the plaintiff, Anthony F. Mannina, shall pay to BUREK & FIELD, attorneys for the defendant, the sum of $300.00 as and for attorney's fees for their representation of the defendant Pola Mannina, in this cause. 4. That the plaintiff, Anthony F. Mannina, shall pay all household bills including the February mortgage payment through the date of entry of this Order. ↩
5. Upon agreement of the former spouses, the Circuit Court of DuPage County modified and corrected the order of March 4, 1977, as follows: 1. That Paragraph Four of the Order entered on March 4, 1977 be and the same hereby is deleted and held for nought and the following substituted in its place: 4. That the Plaintiff, ANTHONY F. MANNINA, shall be responsible for the February mortgage payment on the marital home, and is further responsible for all utilities payments and household bills to February 1, 1977; that the Defendant, POLA MANNINA, shall be responsible for the March, 1977 mortgage payment and all utility payments from February 1, 1977 to the date of the entry of this order. 2.That the Plaintiff, ANTHONY F. MANNINA, shall pay to the Defendant, POLA MANNINA, instanter the sum of $731.00 representing the March, 1977 support payment.↩
6. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
7. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * * (b) Payments to Support Minor Children.--Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.↩
8. The Seventh Circuit, to which this case is appealable, characterizes modified divorce decrees under Illinois state law as "altered" rather than amended decrees. . See Ill. Rev. Stat., ch. 40, § 19 (1956) (repealed effective October 1, 1977). For corresponding provisions see Ill. Rev. Stat., ch. 40, § 510, et al. (1980). We will use the correct term ("altered decree") although it does not seem to have any particular significance for Federal tax purposes.↩
9. We note that for divorce or separation agreements executed after 1984, Congress has overruled , to the extent that the amount by which support is reduced upon contingencies involving a child will now be treated as "fixed." Sec. 71(c), as amended by section 422(a) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 795. The changes also apply to divorce or separation instruments executed before January 1, 1985, but modified on or after that date if the modification expressly provides that the amendments to sec. 71 shall apply to such modification. Tax Reform Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 795.↩
10. Although not clear from the opinion, there are vague intimations that the Commissioner may have been arguing that the payments really represented arrearages in child support payments under the original decree.↩
11. .↩